ACCEPTED
15-25-00013-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/20/2025 10:18 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00013

# In the Fifteenth Court of Appeals
# Austin, Texas

FILED IN
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/20/2025 10:18:09 AM
CHRISTOPHER A. PRINE
Clerk

STATE OF TEXAS, et al.,

*Appellants*,

*v.*

BROADMOOR AUSTIN ASSOCIATES, a Texas Joint Venture,

*Appellee*.

On Appeal from the 455th Judicial District of Travis County,
No. D-1-GN-23-007899

## RESPONSE TO APPELLANTS' MOTION TO STRIKE, AND ALTERNATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

**SCOTT DOUGLASS & McCONNICO LLP**

JASON R. LAFOND
State Bar No. 24103136
CASEY DOBSON
SARA CLARK

303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300
jlafond@scottdoug.com

*Counsel for Appellee*

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ...................................................................................ii

Response to Motion to Strike.................................................................. 1

Alternative Motion for Leave to File Brief............................................. 4

Conclusion and Prayer .......................................................................... 5

Certificate of Compliance ..................................................................... 6

Certificate of Conference ...................................................................... 6

## APPENDIX

**Tab**

**1**   Appellee's Proposed Supplemental Brief

**2**   Broadmoor Letter to Christopher A. Prine, Clerk

# Table of Authorities

**Page(s)**

**Cases**

*Cinco W. Dev., LLC v. Highland Homes-Dall., Inc.*,
2024 WL 5001840 (Tex. App.—Dallas 2024, pet. denied) ...................................2

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
99 F.4th 770 (5th Cir. 2024) ........................................................................3

*In re Commitment of Gipson*,
580 S.W.3d 476 (Tex. App.—Austin 2019, no pet.) ......................................2

*In re Est. of Washington*,
289 S.W.3d 362 (Tex. App.—Texarkana 2009, pet. denied) ........................... 1, 4

*In re Jordan Foster Constr., LLC*,
2023 WL 2366610 (Tex. App.—El Paso, 2023, orig. proceeding) ........................4

*In re KFC USA, Inc.*,
1998 WL 427284 (Tex. App.—Dallas, 1998, orig. proceeding) (ndp)...................4

*In re Reiss*,
2022 WL 500023 (Tex. App.—Dallas, 2022, orig. proceeding) ...........................4

*Jetall Companies, Inc. v. JPG Waco Heritage, LLC*,
2020 WL 5036091 (Tex. App.—Amarillo 2020, pet. denied) .............................2

*Lefebure v. D'Aquilla*,
15 F.4th 670 (5th Cir. 2021) ....................................................................... 2, 4

*Marshall v. MarOpCo, Inc.*,
714 S.W.3d 724 (Tex. App.—Houston [1st Dist.] 2025, pet. filed) ................... 1, 4

*Penson v. Ohio*,
488 U.S. 75 (1988) .....................................................................................2

*Pepper Lawson Horizon Int'l Grp., LLC v. Tex. S. Univ.*,
669 S.W.3d 205 (Tex. 2023).........................................................................2

**Rules**

*Fifteenth Court Local Rules*, Texas Courts, https://tinyurl.com/4mzyfer6...............3

Tex. R. App. P.
9.6 .........................................................................................................1

38.7 ................................................................................................................... 3

52 ...................................................................................................................... 4

**OTHER AUTHORITIES**

6 MCDONALD & CARLSON TEXAS APPELLATE PRACTICE
§ 20:25 (2d ed.) ............................................................................................ 1

O'CONNOR'S TEXAS CIVIL APPEALS App'x III (2025 ed.)
§ CA2 ............................................................................................................ 3

§ CA3 ............................................................................................................ 3

§ CA4 ............................................................................................................ 3

§ CA5 ............................................................................................................ 3

§ CA6 ............................................................................................................ 3

§ CA10 .......................................................................................................... 3

§ CA15 .......................................................................................................... 3

**To the Honorable Fifteenth Court of Appeals:**

The Government's motion to strike accomplishes exactly one thing: It highlights the fact that the Government needed to grasp for new, meritless arguments in its reply brief. Beyond that, the motion is nothing but a burden on counsel's and the Court's time.

The Government's motion to strike is misguided because Broadmoor didn't file a surreply brief. Broadmoor submitted a letter, addressed to the clerk. *See* Tex. R. App. P. 9.6 ("Parties and counsel may communicate with the appellate court about a case only through the clerk."); App'x Tab 2 (letter). If that filing was inappropriate, the clerk could have and likely would have rejected it. *See In re Est. of Washington*, 289 S.W.3d 362, 370–71 (Tex. App.—Texarkana 2009, pet. denied) (cited at Mot. 5). The clerk doesn't need the Government's help. And the Government offers no help in any event because it doesn't and can't point to any rule the letter violated.

A surreply and motion for leave to file was unnecessary and would have been inappropriate to address the Governments new points because "[i]ssues raised by reply brief without permission of the court are not before the court of appeals." 6 McDonald & Carlson Texas Appellate Practice § 20:25 (2d ed.); *accord* Mot. 6; *Marshall v. MarOpCo, Inc.*, 714 S.W.3d 724, 775 n.35 (Tex. App.—Houston [1st Dist.] 2025, pet. filed) ("To the extent that appellants raise arguments in their reply brief, not previously contained in their opening brief, it is improper to do so."); *Cinco W. Dev., LLC v. Highland Homes-Dall., Inc.*, 2024 WL 5001840, at *2

(Tex. App.—Dallas 2024, pet. denied) ("[W]e do not consider arguments raised for the first time in a reply brief."); *In re Commitment of Gipson*, 580 S.W.3d 476, 488 n.6 (Tex. App.—Austin 2019, no pet.) ("To the extent this constitutes a new argument, the State cannot raise it for the first time in the reply brief.").[*] So there's nothing relevant to surreply to.

Even so, Broadmoor recognized that the Court may wish to consider those new arguments anyway because they go to sovereign immunity and thus jurisdiction. *But cf. Pepper Lawson Horizon Int'l Grp., LLC v. Tex. S. Univ.*, 669 S.W.3d 205, 213 (Tex. 2023) (declining to address jurisdictional issue raised for the first time on appeal that hadn't been fully developed). Broadmoor also knows that "our adversarial system of justice . . . is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question." *Penson v. Ohio*, 488 U.S. 75, 84 (1988) (quotation marks omitted); *accord, e.g.*, *Lefebure v. D'Aquilla*, 15 F.4th 670, 674 (5th Cir. 2021) ("[O]ur adversarial legal system . . . relies on the robust exchange of competing views to ensure the discovery of truth and avoid error."). So Broadmoor needed some way to provide its take on the new arguments should the Court decide to consider them; hence, the letter.

---

[*] The Government insists its new arguments were in response to Broadmoor's arguments in its appellee's brief. Even if that were true, it wouldn't matter. "An appellant may not raise additional or new grounds attacking the order or judgment in question via a reply brief . . . even if they are in response to argument within an appellee's brief." *Jetall Companies, Inc. v. JPG Waco Heritage, LLC*, 2020 WL 5036091, at *2 (Tex. App.—Amarillo 2020, pet. denied) (citing authorities).

But even if Broadmoor's letter were treated like a brief, it would still be permissible. Supplemental briefs are allowed "on whatever reasonable terms the court may prescribe." Tex. R. App. P. 38.7; *contra* Mot. 5. Some courts require "a motion for leave to file" such a brief, "unless the brief is requested by the court." O'Connor's Texas Civil Appeals App'x III, § CA2 at 1154 (2025 ed.) (providing local rules); *see also, e.g.*, *id.* § CA4 at 1167–68; *id.* § CA6 at 1172. Some require leave only for post-submission briefs. *See, e.g.*, *id.* § CA3 at 1163. Some don't require leave at all. *See, e.g.*, *id.* § CA5 at 1169–70; *id.* § CA10 at 1179–80. This Court is in that last camp. *See id.* § CA15 at 1188; *Fifteenth Court Local Rules*, Texas Courts, https://tinyurl.com/4mzyfer6 (last visited Aug. 18, 2025). Leave was not necessary for Broadmoor's letter.

The Government cites a handful of decisions it says show Broadmoor's letter—if treated as a brief—was improper. None do. The Government's reliance on federal district court decisions is misplaced because the applicable rules are different and trial courts naturally have different concerns than appellate courts. Still more, when (like here), "a party raises new arguments or evidence for the first time in a reply, the district court *must* either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (emphasis added).

The Government's reliance on a few Texas courts of appeals' decisions doesn't fare any better. The Texarkana Court's decision supports Broadmoor: It

shows that Broadmoor's letter—even if treated as a brief—doesn't run afoul of any rule, and that the Court's acceptance of Broadmoor's letter confirms it's not improper. *See In re Est. of Washington*, 289 S.W.3d at 370–71 ("[S]uch filings are permitted at this Court's discretion. In this case, we did not accept Goolsby's surreply brief for filing." (citation omitted)). The other decisions are inapposite: Each resolves a petition for mandamus, so Rule 38.7 (permitting supplemental briefs) doesn't apply. *See* Mot. 5–6 (citing *In re Jordan Foster Constr., LLC*, 2023 WL 2366610 (Tex. App.—El Paso, 2023, orig. proceeding); *In re Reiss*, 2022 WL 500023 (Tex. App.—Dallas, 2022, orig. proceeding); *In re KFC USA, Inc.*, 1998 WL 427284 (Tex. App.—Dallas, 1998, orig. proceeding) (ndp)); *cf.* Tex. R. App. P. 52 (original proceedings).

The Government's motion is ill-founded and the Court should deny it.

### Alternative Motion for Leave to File Brief

In case Broadmoor has misinterpreted the rules, it respectfully requests that the Court grant leave to file the brief attached as Appendix Tab 1. The brief addresses new arguments raised in the Government's reply brief. The Government's sandbagging is improper. *See, e.g.*, *Marshall*, 714 S.W.3d at 775 n.35. But, because the new arguments go to the trial court's jurisdiction, the Court may nonetheless wish to consider them. If that's the case, the Court should consider the points in the attached brief, as "our adversarial legal system . . . relies on the robust exchange of competing views to ensure the discovery of truth and avoid error." *Lefebure*, 15 F.4th at 674.

## Conclusion and Prayer

The Court should deny the Government's motion to strike. In the alternative, the Court should grant Broadmoor leave to file the brief attached as appendix Tab 1.

Respectfully submitted,

**Scott Douglass & McConnico LLP**

**Jason R. LaFond**
State Bar No. 24103136
jlafond@scottdoug.com
**Casey Dobson**
State Bar No. 05927600
cdobson@scottdoug.com
**Sara Clark**
sclark@scottdoug.com
State Bar No. 00794847
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300

*Counsel for Appellee Broadmoor Austin Associates, a Texas Joint Venture*

## CERTIFICATE OF COMPLIANCE

Microsoft Word 2019 reports that this brief contains 1,130 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

JASON R. LAFOND

## CERTIFICATE OF CONFERENCE

On Thursday, August 14, 2025, appellants' counsel informed me that appellants oppose Broadmoor's alternative motion for leave to file.

JASON R. LAFOND

No. 15-25-00013

# In the Fifteenth Court of Appeals
# Austin, Texas

STATE OF TEXAS, et al.,

*Appellants*,

*v.*

BROADMOOR AUSTIN ASSOCIATES, a Texas Joint Venture,

*Appellee.*

On Appeal from the 455th Judicial District of Travis County,
No. D-1-GN-23-007899

## RESPONSE APPENDIX

**Tab**

**1**     Appellee's Proposed Supplemental Brief

**2**     Broadmoor Letter to Christopher A. Prine, Clerk

# TAB 1

No. 15-25-00013

# In the Fifteenth Court of Appeals
# Austin, Texas

STATE OF TEXAS, et al.,

*Appellants*,

*v.*

BROADMOOR AUSTIN ASSOCIATES, a Texas Joint Venture,

*Appellee*.

On Appeal from the 455th Judicial District of Travis County,
No. D-1-GN-23-007899

## [PROPOSED] SUPPLEMENTAL BRIEF OF APPELLEE

SCOTT DOUGLASS & MCCONNICO LLP

JASON R. LAFOND
State Bar No. 24103136
CASEY DOBSON
SARA CLARK

303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300
jlafond@scottdoug.com

*Counsel for Appellee*

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ..................................................................................... ii

Introduction ............................................................................................... 1

Argument .................................................................................................... 1

I.   HHSC's request for exceptional items doesn't support the Government. ......... 1

II.  Chapter 114 is not limited to contracts with one state agency. ........................... 3

III. The Texas Facilities Commission regulations applied to Novak's
     purported termination. ......................................................................... 4

Conclusion and Prayer .............................................................................. 6

Certificate of Compliance ......................................................................... 8

# Table of Authorities

**Page(s)**

**Cases**

*Progressive Cnty. Mut. Ins. Co. v. Caltzonsing,*
658 S.W.3d 384 (Tex. App.—Corpus Christi-Edinburg 2022, no pet.)..................5

**Statutes**

Tex. Civ. Prac. & Rem. Code
§§ 114.001(2), 114.003..................................................................................3
§§ 114.002–.003 ..........................................................................................4
§ 114.003 ....................................................................................................4

Tex. Gov't Code § 311.012(b)..............................................................................3

**Other Authorities**

41 Tex. Reg. 7709 ............................................................................................ 5, 6

Antonin Scalia & Bryan A. Garner, Reading Law (2012)................4

**Regulations**

1 Tex. Admin. Code §§ 115.20–22.........................................................................6

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

Appellee Broadmoor Austin Associates respectfully submits this supplemental brief addressing an inaccuracy in the Government's reply and addressing two arguments from the Government's reply that didn't appear in its opening brief. None of the Government's new arguments undermines the district court's order denying the Government's plea to the jurisdiction.

## ARGUMENT

### I. HHSC's request for exceptional items doesn't support the Government.

As Broadmoor recounted in the background section of its brief, HHSC's judicially noticeable FY2024–25 biennial baseline appropriations request asked for less money under "Rent – Building" than HHSC projected it needed for the biennium. Appellee Br. 11. HHSC included the remainder in an exceptional item request. *Id.* 11–12.

It's the significance of that exceptional item request that the Government's reply inaccurately describes. In the district court, the Government presented no evidence showing that anyone at HHSC (or anywhere else) ever even considered whether HHSC lacked funds to pay rent, let alone evidence that HHSC actually lacked funds or believed it lacked funds. *See* Appellee Br. 53–55. In its reply, the Government grasps at HHSC's early estimates in its exceptional item request as some evidence that "there are multiple variables that impact the certification for funding and the analysis can be complex." Reply Br. 7–8. The Government, however, still

can't point to any evidence that HHSC lacked sufficient funds or ever considered whether it had sufficient funds—multiple variables or not.

The Government relies on the exceptional item request to suggest HHSC received less funding than it needed for rent. *See* Reply Br. 6–14, 24. But HHSC made that request in early September 2022, nearly a year before Novak's purported termination of the Broadmoor Lease and Niles' incomplete certification. *See* Appellee Br. App'x Tab 6. Thus, HHSC advised in the request that, "[a]s additional information becomes available, the agency will be able to more accurately assess its needs." *Id.*

By mid-2023, it was clear that HHSC had enough money. For example, HHSC's exceptional item request "assumed [a] 9.9% year-over-year increase in the Consumer Price Index for the 2024- 25 biennium." Reply Br. 10. But by the time the Legislature enacted the GAA, the CPI had fallen precipitously. *See id.* 11. Leaving no doubt HHSC knew it had enough funds, Niles certified $93.7 million in annual lease expenses for the upcoming biennium, tens of millions less than appropriated. *See* Reply Br. 30; Appellee Br. 55. There's no evidence that Niles' certified amount didn't include inflation. *Contra* Reply Br. 30–31. But even if it didn't, he'd still know there was plenty of rent money. Even at a grossly exaggerated annual inflation rate of 10%, $93.7 million would be $103 million in year one and $113 million in year two—totaling more than $20 million *less* than was appropriated for rent across the biennium.

In the end, what matters is this: Arguments in briefs aren't evidence. No one has ever certified that funds were unavailable to pay rent due under the Broadmoor

Lease, there's no evidence anyone thought funds were unavailable to pay rent due under the Broadmoor Lease, and all evidence in the record suggests those funds were available and that Niles and Novak knew they were available.

## II. Chapter 114 is not limited to contracts with one state agency.

As Broadmoor showed, the Broadmoor Lease easily fits within the plain text and fair meaning of Texas Civil Practice & Remedies Code Chapter 114's waiver of sovereign immunity. Appellee Br. 19–46. The Government's reply mostly rehashes the unpersuasive arguments from its opening brief. But the reply also makes a new argument, that Chapter 114 turns on the number of state entities that are contractual counterparties. The Government argues that Chapter 114 doesn't apply because "[t]he contract at issue falls within Chapter 2167 of the Government Code, which expressly ***involves two state agencies*** and the State of Texas as lessee; in contrast, Chapter 114 requires a contract for ***a single state agency***." Reply Br. 16–18 (emphases added).

The Government's new argument is easily disposed of. To be sure, Chapter 114 speaks of "a state agency" and "the state agency." *E.g.*, Tex. Civ. Prac. & Rem. Code §§ 114.001(2), 114.003. But in Texas statutes, "[t]he singular includes the plural." Tex. Gov't Code § 311.012(b). Indeed, that rule is a fundamental canon of interpretation because it "is simply a matter of common sense and everyday linguistic experience." Antonin Scalia & Bryan A. Garner, Reading Law 130

(2012). So "state agency" includes "state agencies." Chapter 114's fair meaning thus doesn't limit its waiver to single-agency contracts.

Even putting common sense aside, the Government's new argument falters because Chapter 114's plain text shows that the act of a single state agency triggers Chapter 114's waiver no matter how many other agencies also trigger the waiver. *See* Appellee Br. 24–25. "A state agency . . . *that enters* a contract subject to this chapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract." Tex. Civ. Prac. & Rem. Code § 114.003 (emphasis added). Chapter 114's trigger is *an act*—a state agency entering a specified contract, not the contract itself. And that trigger is a floor, not a ceiling: So long as at least one state agency performs that act, sovereign immunity is waived to adjudicate "a claim for breach of a written con- tract for engineering, architectural, or construction services . . . brought by a party to the written contract." *Id.* §§ 114.002–.003. That happened here. *See* Appellee Br. 25–35.

Nothing in Chapter 114 supports the Government's proposed limit on the waiver's scope.

## III. The Texas Facilities Commission regulations applied to Novak's purported termination.

Broadmoor demonstrated that Novak's purported termination of the Broadmoor Lease was outside his authority because, among other things, Novak's actions violated the Texas Facilities Commission's regulations that bind him. *See* Appellee Br. 56–58.

4

The Government doesn't dispute that Novak's purported termination conflicted with those regulations. They argue only that those regulations "are irrelevant because [they] were not in existence at the time the 2014 Lease was entered into so these regulations do not apply to this Lease." Reply Br. 31. The Government is mistaken.

The Government's new argument is misguided because it applies a rule of *contract interpretation* to an issue that doesn't turn on interpreting a contract. The government relies on a decision that recites "[t]he general rule . . . that the laws which are in existence at the time of the making of the **contract** are impliedly incorporated **into the contract**." *Progressive Cnty. Mut. Ins. Co. v. Caltzonsing*, 658 S.W.3d 384, 393 (Tex. App.—Corpus Christi-Edinburg 2022, no pet.) (citation omitted; emphases added) (cited at Reply Br. 31). But Broadmoor doesn't rely on the regulations to support its breach of contract claim or for any other contract issue. It relies on them to support its *ultra vires* claim, which doesn't depend on the lease's terms and doesn't arise from any nonperformance under the lease. *See* Appellee Br. 56–58; *contra* Government's Mot. Strike 10 (suggesting Broadmoor "argues that Appellants acted *ultra vires* in relation to their performance under the Lease.").

The regulations matter because they plainly govern Novak's authority to terminate the Broadmoor Lease: They "set[] out the procedure for the cancellation of a lease due to a lack of funding"—an administrative function, not a contractual one. 41 Tex. Reg. 7709, 7709 (Sept. 16, 2016) (adopting regulations). Novak engaged in acts

those regulations govern—"process[ing] . . . *any request* to cancel a lease due to a lack of funding." *See id.* (emphasis added). And the date that controls is the date of the request to cancel a lease based on lack of funding, *see id.* at 7710 ("Effective date: October 3, 2016"), not the date of the lease whose cancellation is requested, *see* 1 Tex. Admin. Code §§ 115.20–22 (no mention of lease execution date). Novak had no authority to ignore the regulations. By ignoring them anyway, he acted *ultra vires*.

## Conclusion and Prayer

The Court should affirm the district court's order denying the Government's plea to the jurisdiction. Alternatively, if the Court finds that Broadmoor's allegations are insufficient, it should remand for repleading.

Respectfully submitted,

**Scott Douglass &
McConnico LLP**

Jason R. LaFond
State Bar No. 24103136
jlafond@scottdoug.com
Casey Dobson
State Bar No. 05927600
cdobson@scottdoug.com
Sara Clark
sclark@scottdoug.com
State Bar No. 00794847
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300

*Counsel for Appellee Broadmoor Austin Associates, a Texas Joint Venture*

## CERTIFICATE OF COMPLIANCE

Microsoft Word 2019 reports that this brief contains 1,365 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

JASON R. LAFOND

# TAB 2



ACCEPTED
15-25-00013-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/28/2025 10:14 AM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/28/2025 10:14:03 AM
CHRISTOPHER A. PRINE
Clerk

Jason LaFond
jlafond@scottdoug.com

July 28, 2025

**VIA E-FILING**

Mr. Christopher A. Prine, Clerk
Fifteenth Court of Appeals
William P. Clements Building
300 W. 15th Street, Suite 607
Austin, Texas 78701

Re:     *State v. Broadmoor Austin Associates*, No. 15-25-00013-CV

Dear Mr. Prine:

Appellee Broadmoor Austin Associates respectfully submits this letter to correct an inaccuracy in Appellants' reply brief and to address two arguments from Appellants' reply brief that didn't appear in Appellants' opening brief. Please forward this letter to the panel's attention at your convenience.

### *HHSC's exceptional item request doesn't support Appellants' arguments.*

As Broadmoor recounted in the background section of its brief, HHSC's judicially noticeable FY2024–25 biennial baseline appropriations request asked for less money under "Rent – Building" than HHSC projected it needed for the biennium. Broadmoor Br. 11. HHSC included the remainder in an exceptional item request. *Id.* 11–12.

It's the significance of that exceptional item request that the Appellants' reply inaccurately describes. In the district court, Appellants presented no evidence showing that anyone at HHSC (or anywhere else) ever even considered whether HHSC lacked funds to pay rent, let alone evidence that HHSC actually lacked funds or believed it lacked funds. *See* Broadmoor Br. 53–55. In their reply, Appellants grasp at HHSC's early estimates in its exceptional item request as some evidence that "there are multiple variables that impact the certification for funding and the analysis can be complex." Reply Br. 7–8. Appellants, however, still can't point to any evidence that HHSC lacked sufficient funds or ever considered whether it had sufficient funds—multiple variables or not.

Appellants rely on the exceptional item request to suggest HHSC received less funding than it needed for rent. *See* Reply Br. 6–14, 24. But HHSC made that request in early September 2022, nearly a year before Novak's purported termination of the Broadmoor Lease and Niles' incomplete certification. *See* Broadmoor Br. App'x Tab 6. Thus, HHSC advised in the request that, "[a]s additional information becomes available, the agency will be able to more accurately assess its needs." *Id.*

By mid-2023, it was clear that HHSC had enough money. For example, HHSC's exceptional item request "assumed [a] 9.9% year-over-year increase in the Consumer Price Index for the 2024-25 biennium," Reply Br. 10, but by the time the Legislature enacted the GAA, the CPI had fallen precipitously. *See id.* 11. Leaving no doubt HHSC knew it had enough funds, Niles certified $93.7 million in annual lease expenses for the upcoming biennium, tens of millions less than appropriated. *See* Reply Br. 30; Broadmoor Br. 55. There's no evidence that Niles' certified amount didn't include inflation. *Contra* Reply Br. 30–31. But even if it didn't, he'd still know there was plenty of rent money. Even at a grossly exaggerated annual inflation rate of 10%, $93.7 million would be $103 million in year one and $113 million in year two—totaling more than $20 million *less* than was appropriated for rent across the biennium.

In the end, what matters most is this: Arguments in briefs aren't evidence. No one has ever certified that funds were unavailable to pay rent due under the Broadmoor Lease, there's no evidence anyone thought funds were unavailable to pay rent due under the Broadmoor Lease, and all evidence in the record suggests both that those funds were available and that Niles and Novak knew they were available.

### *Chapter 114 is not limited to contracts with one state agency.*

As Broadmoor showed, the Broadmoor Lease easily fits within the plain text and fair meaning of Texas Civil Practice & Remedies Code Chapter 114's waiver of sovereign immunity. Broadmoor Br. 19–46. Appellants' reply mostly rehashes their own unpersuasive arguments from their opening brief without addressing Broadmoor's. But their reply also makes a new argument, that Chapter 114 turns on the number of state entities that are contractual counterparties. Appellants argue that Chapter 114 doesn't apply because "[t]he contract at issue falls within Chapter 2167 of the Government Code, which expressly **involves two state agencies** and the State of Texas as lessee; in contrast, Chapter 114 requires a contract for **a single state agency**." Reply Br. 16-18 (emphases added).

The Appellants' new argument is easily disposed of. To be sure, Chapter 114 speaks of "a state agency" and "the state agency." *E.g.*, Tex. Civ. Prac. & Rem. Code §§ 114.001(2), 114.003. But in Texas statutes, "[t]he singular includes the plural." Tex. Gov't Code § 311.012(b). Indeed, that rule is a fundamental canon of interpretation because it "is simply a matter of common sense and everyday linguistic experience." Antonin Scalia & Bryan A. Garner, Reading Law 130 (2012). So "state agency" includes "state agencies." Chapter 114's fair meaning thus doesn't limit its waiver to single-agency contracts.

Even putting common sense aside, Appellants' argument falters because Chapter 114's plain text shows that the act of a single state agency triggers Chapter 114's waiver no matter how many other agencies also trigger the waiver. *See* Broadmoor Br. 24–25. "A state agency . . . *that enters* a contract subject to this chapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract." Tex. Civ. Prac. & Rem. Code § 114.003 (emphasis added). Chapter 114's trigger is *an act*—a state agency entering a specified contract, not the contract itself. And that trigger is a floor, not a ceiling: So long as at least one state agency performs that act, sovereign immunity is waived to adjudicate "a claim for breach of a written contract for engineering, architectural, or construction services . . . brought by a party to the written contract." *Id.* §§ 114.002–.003. That happened here. *See* Broadmoor Br. 25–35.

Nothing in Chapter 114 supports Appellants' proposed limit on the waiver's scope.

***The Texas Facilities Commission regulations applied to Novak's purported termination.***

Broadmoor demonstrated that Novak's purported termination of the Broadmoor Lease was outside his authority because, among other things, Novak's actions violated the Texas Facilities Commission's regulations that bind him. *See* Broadmoor Br. 56–58.

The Appellants don't dispute that Novak's purported termination conflicted with those regulations. They argue only that those regulations "are irrelevant because [they] were not in existence at the time the 2014 Lease was entered into so these regulations do not apply to this Lease." Appellants Br. 31. Appellants are mistaken.

The Appellants' new argument is misguided because it applies a rule of *contract interpretation* to an issue that doesn't turn on interpreting a contract. Appellants rely on a decision that recites "[t]he general rule . . . that the laws which are in existence at the time of the making of the ***contract*** are impliedly incorporated ***into the contract***." *Progressive Cnty. Mut. Ins. Co. v. Caltzonsing*, 658 S.W.3d 384, 393 (Tex. App.—Corpus Christi-Edinburg 2022, no pet.) (citation omitted; emphases added) (cited at Appellants Br. 31). But Broadmoor doesn't rely on the regulations to support its breach of contract claim or for any other contract issue. It relies on them to support its *ultra vires* claim, which doesn't depend on the lease's terms. *See* Broadmoor Br. 56–58.

The regulations matter because they plainly govern Novak's authority to terminate the Broadmoor Lease: They "set[] out the procedure for the cancellation of a lease due to a lack of funding"—an administrative function, not a contractual one. 41 Tex. Reg. 7709, 7709 (Sept. 16, 2016) (adopting regulations). Novak engaged in acts those regulations govern—"process[ing] . . . *any request* to cancel a lease due to a lack of funding." *See id.* (emphasis added). And the date that controls is the date of the request to cancel a lease based on lack of funding, *see id.* at 7710 ("Effective date: October 3, 2016"), not the date of the lease whose cancellation is requested, *see* 1 Tex. Admin. Code §§ 115.20–22 (no mention of lease execution date). Novak had no authority to ignore the regulations. By ignoring them anyway, he acted *ultra vires*.

\* \* \*

The Court should affirm the district court's order denying the Government's plea to the jurisdiction. Alternatively, if the Court finds that Broadmoor's allegations are insufficient, it should remand for repleading.

Sincerely,

Jason R. LaFond
State Bar No. 24103136
jlafond@scottdoug.com
*Counsel for Appellee Broadmoor Austin*
*Associates, a Texas Joint Venture*

cc:      Counsel of Record via efile

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason LaFond on behalf of Jason LaFond
Bar No. 24103136
jlafond@scottdoug.com
Envelope ID: 104603079
Filing Code Description: Motion
Filing Description: Response to Motion to Strike and Alternative Motion for Leave to File
Status as of 8/20/2025 11:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 8/20/2025 10:18:09 AM | SENT |
| Angela Goldberg | | agoldberg@scottdoug.com | 8/20/2025 10:18:09 AM | SENT |
| Susie Smith | | ssmith@scottdoug.com | 8/20/2025 10:18:09 AM | SENT |
| Jason R.LaFond | | jlafond@scottdoug.com | 8/20/2025 10:18:09 AM | SENT |
| Kemp Kasling | | kkasling@kaslinglaw.com | 8/20/2025 10:18:09 AM | SENT |
| Angie Espinoza | | aespinoza@scottdoug.com | 8/20/2025 10:18:09 AM | SENT |
| Carla Matheson | | cmatheson@scottdoug.com | 8/20/2025 10:18:09 AM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 8/20/2025 10:18:09 AM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 8/20/2025 10:18:09 AM | SENT |

Associated Case Party: Broadmoor Austin Associates, a Texas Joint Venture

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sara W.Clark | | sclark@scottdoug.com | 8/20/2025 10:18:09 AM | SENT |
| Casey Dobson | | cdobson@scottdoug.com | 8/20/2025 10:18:09 AM | SENT |